UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

MATTHEW KERN PRENTICE,

        Debtor.
_____/

Case No. 11-41837
Chapter 7
Hon. Walter Shapero

## OPINION GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

### Introduction

The basic issue here is the vitality and effect of an executory contract which the trustee neither assumed nor rejected within the 60-day period provided for under 11 U.S.C. § 365(d)(1).

### Background

Matthew Prentice ("Debtor") is a restauranteur in Southeastern Michigan. On October 26, 2009, The Best Team Ever, Inc. ("Movant"), formerly known as Trowbridge Restaurants, Inc., signed Debtor to an employment contract as its chief executive officer with various responsibilities including, but not limited to, overseeing a number of its local restaurants. In exchange for a base salary of $4,000 per month, Debtor agreed to, among other things, a broad non-compete clause, which precludes Debtor from competing against Movant in any manner whatsoever during, or for the five years following, termination of Debtor's employment. There is also a $500,000 liquidated damages clause. On January 25, 2011, the parties effected a one-page amendment to the contract, which added an integration clause and the names of particular restaurants encompassed by the contract. Debtor filed this chapter 7 bankruptcy case the following day, on January 26, 2011. The Trustee did not move to assume or reject the contract within the 60-day period allowed for such under § 365(d)(1), nor was that period extended.

Movant alleges Debtor resigned on or about March 26, 2012, and further alleges:

> Debtor is presently and continues to be in default of his employment agreement by attempting to solicit known business contacts and funds belonging to [Movant] and its related companies, solicit/harass employees from [Movant], obtain trade secrets . . . , attempt to open operations in competition with [Movant] and its related entities, interfering with the disbursement of checks meant for [Movant] and its related entities, and harass current empoloyees of [Movant].

(Mot. Relief (Docket No. 66) ¶ 8 (citations omitted).) Movant here specifically seeks a stay lift for the limited purpose of proceeding to the state courts to enforce the non-compete clause and/or to otherwise redress the alleged breaches thereof. Debtor's response is that Movant cannot succeed in a state court action against him, and therefore the motion should be denied; Debtor's theory being that (a) the failure of the Trustee to assume or reject the contract within the 60 days permitted by § 365(d)(1) rendered the contract null and void and makes the non-compete clause unenforceable as of the date of petition filing and (b) Movant is thus limited to recovery of a prepetition claim for the $500,000 liquidated damages.

### Discussion

The motion is brought under 11 U.S.C. § 362(d)(1) and Fed.R.Bankr.P. 4001(a)(3).[1] Per § 362(d)(1),

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ***for cause***, including the lack of adequate protection of an interest in property of such party in interest[.]

---

[1] Movant initially sought relief under § 362(f) too. The action thereunder is now moot, however, given the holding of the § 362(d)(1) hearing on April 18, 2012.

(Emphasis added.)  Fed.R.Bankr.P. 4001(a)(3) makes stay lift effective 14 days after entry of an order under § 362(d)(1).  "Cause for relief from stay is not defined by § 362(d)(1).  Therefore, courts must determine whether discretionary relief is appropriate on a case-by-case basis."  State Bank v. Miller (In re Miller), 459 B.R. 657, 676 (B.A.P. 6th Cir. 2011) (quotations and citations omitted). Cause can arise from a movant's need to seek recourse under state law in a state court.  See id. at 665, 676.  Cause can be found not to exist if such recourse is impossible, i.e., if a movant cannot succeed with its proposed state action.  See id.; accord Garzoni v. K-Mart Corp. (In re Garzoni), 35 Fed. Appx. 179, 181 (6th Cir. 2002) (citation omitted).

> A court hearing on a motion for relief from [the automatic] stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay.

Simon v. JPMorgan Chase Bank, N.A. (In re Lebbos), 455 B.R. 607, 614 (Bankr. E.D. Mich. 2011) (this Court) (quoting Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 33-34 (1st Cir. 1994)).

No one here disputes that Debtor's contract with Movant is an executory contract.  See generally Terrell v. Albaugh (In re Terrell), 892 F.2d 469, 471 (6th Cir. 1989) (adopting and applying the "Countryman" definition of executory contract as "a contract under which the obligation of both the bankruptcy and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other").

3

Section 365(d)(1) states, "[I]f the trustee does not assume or reject an executory contract . . . of the debtor within 60 days after the order for relief . . . then such contract or lease is deemed rejected." Section 365(g)(1) states that the rejection "constitutes only a breach of such contract," as of "immediately before the date of the petition filing," and "[a]ny claim arising from this breach is deemed to have arisen pre-petition." Hence, "the effect of the breach is to permit the creditor to seek allowance of its claim under [11 U.S.C.] § 502." Miller v. Chateau Communities (In re Miller), 282 F.3d 874, 877 (6th Cir. 2002) (quotation and citation omitted).

This Court agrees with what is stated in Collier:

> Unlike other provisions of section 365, which mention the "termination" of a contract or lease, section 365(g) describes the effect of rejection as a "breach" of the contract or lease. Indeed, section 365 uses the terms "rejection," "breach" and "termination" differently. Thus, "rejection" is the decision of the trustee or the debtor, as the case may be, not to assume a burdensome contract or lease. "Rejection" constitutes a "breach" pursuant to section 365(g), except to the extent that a contract or lease is "terminated" pursuant to section 365(h) or (i). Subsections (h) and (i) authorize lessees of real property, timeshare purchasers or buyers of real property to remain in possession of the property after rejection by a lessor or seller or, alternatively, to treat the lease or sale agreement as "terminated" by the rejection. Other than the option given to lessees and purchasers to treat rejection as termination, section 365 does not explicitly provide for termination of a party's or lessee's contract interests. Moreover, if rejection of the lease worked a termination, it would be difficult to justify granting the other party to the contract or lease a damage claim for rejection, which the lessor is given by section 502(g). Similarly, because a rejection constitutes only a breach, not a termination, a covenant not to compete in a rejected contract continues to bind the debtor, unless the obligation is discharged.

Collier on Bankruptcy P 365.10[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Accord Chateau Communities, 282 F.3d at 878 (making clear that a rejection under § 365(d)(1) is a breach and not a termination); In re DMR Fin. Servs., 274 B.R. 465, 472 (Bankr. E.D. Mich. 2002) (this

4

Court) ("[R]ejection will not relieve Debtor of any future obligations, burdensome, substantial or otherwise."); Sir Speedy Inc. v. Morse, 256 B.R. 657, 659-60 (D. Mass. 2000) (finding a non-compete clause continues to bind after rejection); In re Spooner, 2012 Bankr. LEXIS 1151, at *11 (Bankr. N.D. Ohio 2012) (same); Dutch Pharm., Inc. v. Weathers (In re Weathers), 465 B.R. 782, 785 (Bankr. N.D. Miss. 2011) (same). Therefore, the rejection did not (contrary to Debtor's position) perforce render the non-complete clause void or unenforceable.

## Conclusion

All Movant needs to show at this juncture is a colorable claim to an action under state law to enforce the non-compete clause. Given the foregoing, Movant has done so, and a stay lift is warranted for the limited purpose of allowing Movant to seek enforcement of its rights in state court. The extent, if any, to which it is enforceable is a matter for the state court to determine and this Court is not here at all opining on that matter. Movant shall present an appropriate order to that effect.

**Signed on May 17, 2012**

               **/s/ Walter Shapero**
              **Walter Shapero**
              **United States Bankruptcy Judge**